No. 18,662.

C. W. BEELER, *Appellant,* v. J. E. SIMS, *Appellee.*

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. ABSTRACT OF TITLE—*When Title is Unmarketable.* The rule respecting the use of affidavits in making abstracts of title, stated in *Linscott v. Moseman,* 84 Kan. 541, 114 Pac. 1088; *Van Gundy v. Shewey,* 90 Kan. 253, 133 Pac. 720; and in this case, reported in 91 Kan. 757, 761, 139 Pac. 371, is adhered to.

2. SAME—*Appearance of Tax Deed in Abstract—Effect.* An abstract of title noted the appearance of a tax deed upon the record in no other way than by designating the instrument as a tax deed issued to a person named on a date given, and stating the date, book and page of the record. It is held that the abstract of the tax deed was not sufficient to show a merchantable title.

3. ——— *Practice—On Appeal—Case Originally Submitted on Single Question—Can Not be Changed on Rehearing.* Where a case was submitted upon one single question, definitely stated to be the only question to be decided, which alone was argued, considered and decided, a different question will not be considered when presented for the first time on a rehearing, and there is no suggestion of surprise, accident or mistake.

Appeal from Edwards district court; ALBERT S. FOULKS, judge. Opinion on rehearing filed November 14, 1914. Reaffirmed. (For original opinion see 91 Kan. 757, 137 Pac. 371.)

*Frank L. Martin,* of Hutchinson, *Albert Watkins,* and *Arthur C. Scates,* both of Dodge City, for the ap-appellant.

*A. C. Dyer,* and *A. L. Moffat,* both of Kinsley, for the appellee.

*Robert Stone, George T. McDermott, Leonard S. Ferry, Thomas F. Doran, John S. Dean, Robert W. Blair, Charles A. Magaw, Thomas M. Lillard, Bennett R. Wheeler,* and *John F. Switzer,* all of Topeka, as *amici curiæ.*

The opinion of the court was delivered by

BENSON, J.: The opinion in this case, reported in 91 Kan. 757, 139 Pac. 371, appears to have caused apprehension that transactions in real estate would be hindered by the interpretation given to the agreement to furnish an abstract showing a merchantable title. Upon the rehearing the case has again been argued with great zeal and ability, but we are satisfied that the opinion is well within the safe currents of reason and authority.

The paragraph of the opinion especially criticized is this:

"Here the abstract shows an outstanding title in fee in Pieper. Its validity depends upon matters of fact concerning notice, possession and periods of limitation. To require a purchaser to accept affidavits upon such matters would impose too great a hazard and would be unjust. Whether Pieper is living or dead does not appear, and so another element of uncertainty arises, respecting heirship, minority, and the period of limitations. (*Beeler v. Sims,* 91 Kan. 757, 761, 139 Pac. 371.)

After referring to this paragraph counsel say:

"A conscientious examiner of real estate titles will not contend that a court should hold a title to be a marketable title when its validity depends, not upon a record chain, but merely upon adverse possession."

This declaration suggests the real turning point in this lawsuit. While the title here, it is true, does not

rest upon adverse possession alone, its validity, as the abstract shows, depends, in part at least, upon the question whether there was possession adverse to the title under the sheriff's deed when the proceedings upon which it was based were commenced. And this question is presented by the abstract. The conveyance to Huntin was made by the holder of the fee title. It is not, as characterized in the argument, a "wild deed," but is found within the regular chain of conveyances— a fact that seems to have been overlooked, for in the same brief it is said, using the language of the opinion in *Prest v. Black,* 63 Kan. 682, 66 Pac. 1017:

"It is undeniable that only such conveyances or other grants as are in the record chain of title are constructive notice to subsequent purchasers or encumbrancers. The registering of a deed or will by a stranger to the record chain does not impart notice to any one." (p. 684.)

It is sufficient to say that the Huntin deed was not made by a stranger to the record, but by one who then owned the fee as the record showed.

Briefly stated, the situation revealed by the abstract is that the title was in Wilcox. On March 20, 1889, he conveyed to Huntin, Huntin to Drew, and Drew to Pieper, the last conveyance being dated May 31, 1898. With Pieper the record title ends. The sheriff's deed is based upon a foreclosure suit commenced March 3, 1890, against Wilcox and wife and the mortgagors. At that time the fee title was in Huntin, who was not made a party. The last grantee, Pieper, owns it according to the record unless Rush, the purchaser at the sheriff's sale, and his grantees are protected because of the absence of the Huntin, Drew and Pieper deeds from the record at the commencement of the foreclosure.

The situation is simplified by remembering that the sheriff's deed is of no greater efficacy than a conveyance from Wilcox (and the other parties to the foreclosure) would have been. If Wilcox was then in pos-

session, or if the land was then vacant, the Rush title is good, but the affidavits do not state whether either of these facts existed.  Inasmuch as affidavits were resorted to, the omission is significant, and such as would attract the attention of a careful examiner.  Each of the affiants testified:

"That he has been acquainted with Section 29, in Township 26 south, of Range 30 west of the 6th P. M. in Gray County, for the past 20 years, having seen and been on the land at least once each year for the past 20 years, and positively knows that no one has been in possession of said land except Clint C. Rush and B. C. Nields and their grantees under them.  That there has been no adverse possession to them, or to their grantees."

If the abstract showed title from the record alone it would be sufficient, or if it showed title from the record aided by adverse possession it might be sufficient, but failing in either respect it is insufficient.  Because of this defect the affidavits were procured and attached. The contention is that this outstanding title was divested by adverse possession.  Whether it was so divested depends on facts not shown by the affidavits. They do not show that the possession was open, actual and exclusive.  (*Dickinson v. Bales*, 59 Kan. 224, 227, 52 Pac. 447; Warvelle on Abstracts, 3d ed., § 574.) Again, the time necessary for adverse possession to ripen into title as against the owner in fee is fifteen years, in analogy to the statute of limitations.

"In other words, as fifteen years' possession under a claim of title is, generally speaking, by the statute of limitations a bar to an action brought by one under no disability, proof of such possession is sufficient evidence of title."  (*Hollenback v. Ess*, 31 Kan. 87, 88, 1 Pac. 275.)

In the case of a minor the disability enlarges the time to two years after he reaches majority.  (Civ.

Code, §§ 15, 16.)   It was said in *Goodman v. Nichols*, 44 Kan. 22, 23 Pac. 957:

"A title by prescription arises in the adverse occupant at the end of 15 years, if the owner labors under no disability; and if he does, within two years after the disability is, removed."   (p. 29.)

The important qualification in this quotation concerning disability must be noticed.

If adverse possession under the sheriff's deed was taken, a cause of action to recover the land accrued in favor of the holder of the Huntin title.   If the owner was then an adult and the adverse possession was continued without interruption he was barred in fifteen years.   If he was a minor the period of limitation would be extended for two years after attaining majority, although if a cause of action accrues to an adult owner in possession his subsequent death and a descent cast upon a minor heir would not interrupt the running of the statute.   (*Davis v. Threlkeld*, 58 Kan. 763, 51 Pac. 226.)

The former opinion, however, was not based on insufficient statements of the affidavits, but upon the principle that a contract to furnish an abstract showing a marketable title is not complied with by presenting one that purports to show by affidavit only that the fee title, which appears by the abstract to be outstanding, has been divested by limitation or adverse possession. Repeating the language of the Nellans case, "A title is doubtful if it exposes the party holding it to the hazards of litigation."   (*McNutt v. Nellans*, 82 Kan. 424, syl. ¶ 2, 108 Pac. 834.)   Whether the holder of the Huntin title, be he adult or minor, under disability or not, is barred by limitation or adverse possession depends of course upon extrinsic facts.   Must the vendee take the risk of proving such facts?

It was held in Nebraska that unreleased trust deeds made to secure the payment of money constitute defects in the title that will excuse a vendee from per-

formance although upon the face of the record the statute of limitations may have barred the creditor or the trustee from foreclosure. (*Justice v. Button,* 89 Neb. 367, 131 N. W. 736.) A note following the report of this case in 38 L. R. A., n. s., 1, on the subject, "What is a marketable title?" reviews a multitude of cases. In that case it appeared that there was an agreement to furnish an abstract. A tax deed had been issued on the land subsequent to the trust deeds, and affidavits were attached to the abstract to prove that the parties under whom the vendor claimed title had held possession by virtue of that deed for more than seven years preceding the tender of the abstract. The land was situated in Colorado, and it was contended that because the creditors were not within the exceptions of the statute of limitations of that state the trust deeds were not encumbrances upon the land. Replying to this contention the court said, "Neither creditor makes a statement that the debt has been paid, and they would not be bound by an affidavit sworn to by the owner of the land." (p. 369.) No reference is made in the opinion to the tax deed held by the vendor—as one is held in this case, to buttress the title. The opinion, although quite brief, discloses the views of that court concerning the office of affidavits upon abstracts when used to prove the fact that outstanding liens are barred by limitations. In the note referred to under the subhead "Right to rely on abstract," at page 8, the commentator says:

"Where the contract calls for an abstract showing a marketable title the purchaser has a right to rely upon the abstract, and if that does not show a marketable title, he is justified in refusing to accept the property."

Many cases are cited as supporting this proposition. In *Howe v. Coates,* 97 Minn. 385, 107 N. W. 397, 4 L. R. A., n. s., 1170, it was held by the court:

"A purchaser will not be compelled to take a title

when there is a defect in the record title which can be cured only by resorting to parol evidence." (Syl. ¶ 3.)

In that case, the contract, as the court construed it, required the vendor to furnish an abstract showing a marketable title of record. A distinction is made in the L. R. A. note before referred to between such a contract and one merely requiring that the abstract shall show a marketable title. The opinion, however, discusses the whole subject in a luminous and highly satisfactory manner, and cites, among a multitude of cases, *Rutherford Land & Improvement Co. v. Sanntrock,* (N. J. Eq. 1899), 44 Atl. 938, in which Pitney, V. C., said:

·"I will define a title that is not marketable as, in the first place, one where the written title contains on its face some notice of something outside which may lead to some fact that may disturb the title; where the deeds, wills, or decrees, give on their face some indication of some existing outstanding fact which will affect the title. Then another one is where the title depends necessarily upon matter *in pais,* which is in itself a doubtful fact, and never can be determined or established except by bringing every party interested into court—certainly others beside the immediate party to the suit for specific performance." (p. 939.)

In *Shriver et al. v. Shriver et al.,* 86 N. Y. 575, it was said:

"A title may be doubtful, which is to say unmarketable, because of the uncertainty of some matter of fact appearing in the course of the deduction of it." (p. 584.)

In *Heller v. Cohen,* 154 N. Y. 299, 48 N. E. 527, where the record shows defects in a judicial proceeding through which the title was derived, the same court stated several rules to determine whether a title is marketable, deduced from former decisions of that court, among others this:

"Where there is a defect in the record title which can be supplied only by resort to parol evidence, and the

title may depend upon questions of fact, the general rule is that the purchaser will not be required to perform his contract." (p. 306.)

Referring to the argument that although the title of record was defective it was cured by adverse possession of the vendor, it was said:

"It is not sufficient that he has merely held the possession undisturbed for the period of twenty years. The fact that the plaintiffs and their predecessor in title were in the undisturbed possession of the land for twenty years and upwards, does not show that the possession was adverse." (p. 311.)

The foregoing authorities, and others that might be cited to the same effect, are in harmony with the opinion in Linscott v. Moseman, 84 Kan. 541, 114 Pac. 1088, where the subject of affidavits reinforcing abstracts is fully considered. After quoting from Warvelle on Abstracts, p. 313, where sworn expert statements respecting deaths, births, marriages, and the like are referred to, it is said:

"Except in cases of the kind indicated, a vendee can not be compelled to accept a title depending for its validity upon parol evidence which he may not be able to command when needed." (p. 547.)

It was held in the Linscott case that an affidavit attached to an abstract did not remove a cloud on the title created by an oil-and-gas lease. See, also, Maupin on Marketable Title to Real Estate, 2d ed., § 289, from which a quotation is also made in the Linscott case.

Without further citations it sufficiently appears from decisions in this state and in other jurisdictions that this abstract of title did not show a marketable title. The defendant is not required to assume the hazard of proof to defend what appears from the record, as shown upon the abstract, to be an outstanding title in Pieper. The burden should be upon the vendor to procure a conveyance from the persons holding such an interest or otherwise to establish a superior right in himself.

Beeler v. Sims.

We are not required to pass upon the validity of the plaintiff's title, but only upon the sufficiency of the abstract to compel specific performance. (1 Enc. L. & P. 200.) This proposition is more fully stated in the Nellans case.

It is next contended that the notation in the abstract of a tax deed in the chain of conveyances under which plaintiff claims shows his title to be perfect. This notation is only that a tax deed was issued by the county clerk on a date named to B. C. Nelds, giving the date, book, and page of the record. It is argued that because a perfect tax deed is *prima facie* evidence of the regularity of the proceedings and of a good title, the mere designation is sufficient. Many tax deeds, however, are void upon their face. Others are avoided for irregularity in antecedent proceedings or failure to take possession in the time allowed by law. Certainly an abstract, if it does not set out the substance of the antecedent proceedings upon which the deed is based, should at least state enough of the contents of the instrument to show that it is valid upon its face. It is not believed that competent examiners would consider the mere name of the instrument sufficient. That is not an abstract, but an appellation.

A form for abstracting a tax deed is given in Warvelle on Abstracts, 3d ed., § 537. The author, at section 540, says:

"Whenever a tax deed is relied on as a foundation of title which is independent of and adverse to all other titles, particularly that of the person who was last seized of the fee, a full exposition of the method by which the right was acquired is an essential preliminary to demonstrate the validity of all succeeding conveyances. The tax deed, unaided by statute, is not sufficient to demonstrate title, though it may be *prima facie* evidence of such, but the prior steps must be shown and all the requisites necessary to a complete and perfect title under the statute must be fully and succinctly stated."

(See, also, 1 Enc. L. & P. 199.)

Finally it is said in the argument on this rehearing that the question whether the abstract showed a marketable title was not material; that if it did not, it should have been returned for correction with objections.

This is a complete departure from the position taken at the first argument. It was then stated at the opening of the plaintiff's brief:

"The only question for the court to determine in this case is as to whether or not the abstract of title tendered by the appellant, C. W. Beeler, showed a good merchantable title in him to certain lands described in his petition."

Accepting this statement the pleadings were not critically examined to determine whether the demurrer should have been sustained, but the abstract was examined to see whether it disclosed a merchantable title. There is no suggestion of mistake, accident or surprise in making this frank statement of the issues, and no reason appears why the only question submitted for decision, which alone was argued, considered and decided, should be changed at this advanced stage of the litigation and an entirely new inquiry be entered upon.

The former judgment of affirmance is adhered to.