No. 38,023

Lucile E. Neiman, *Appellee,* v. Courtney B. Davis and Courtney B. Davis, Inc., a Corporation, *Appellants.*

(225 P. 2d 124)

Opinion filed December 9, 1950.

*P. K. Smith,* of Wichita, argued the cause, and *Ralph E. Gilchrist* and *Carl L. Buck,* both of Wichita, and *Rodney Stone* and *Bernard Peterson,* both of Newton, were with him on the briefs for the appellants.

*Byron Brainerd,* of Wichita, argued the cause, and *J. G. Somers, Arthur Turner,* and *George A. Robb,* all of Newton, and *Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Lawrence E. Curfman* and *William C. Kandt,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, C. J.: This was an action for the possession of a described tract of land about sixty feet wide and half a mile long, which plaintiff claimed to own, for damages for its alleged wrongful use by defendants, and to enjoin them from removing certain improvements therefrom. The action and the temporary injunction sought by plaintiff was brought in October, 1945. The trial of the action was delayed pending the outcome of litigation over an official survey of plaintiff's property made by the county surveyor earlier in October, 1945. This litigation reached this court and was decided by an opinion handed down December 11, 1948, and reported in 166 Kan. 246, 200 P. 2d 322. On May 14, 1949, plaintiff filed her second amended petition. We shall refer to this as her petition, since the earlier ones are not before us. In the petition plaintiff, after stating the parties and their residence, alleged plaintiff was the owner of the legal title to the west half of the southwest quarter of Section Nineteen, Township Twenty-four South, Range Two East, Sixth Principal Meridian, in Harvey county, Kansas, and was entitled to

possession thereof; that when she acquired the property it was used for agricultural and grazing purposes and was so used up to the time of the wrongful exclusion of plaintiff, later alleged; that the northern approximately three-fourths of the property was under cultivation by a tenant or tenants of plaintiff and used for the production of crops, from which plaintiff received income; that the remainder of the property was pasture land and used for grazing purposes; that plaintiff is informed, believes and so alleges that defendants are the owners of the legal title to real estate adjoining on the east of the real estate described as belonging to plaintiff; that the real estate owned by defendants is described as the east half of the southwest quarter of Section Nineteen, Township Twenty-four, Range Two East, in Harvey county, Kansas; that at the time this real estate was acquired by defendants, and for many years prior thereto, the real estate owned by the plaintiff was bounded on the east and the real estate now owned by defendants was bounded on the west by a fence common to both properties, which fence was located at or near the true boundary between the two properties; that at some date known to defendants but unknown to plaintiff, but which plaintiff is informed and believes was during the late spring or summer of 1936, defendants erected a fence approximately sixty feet west of the east line of plaintiff's property; that since the date of the erection of the fence defendants have wrongfully and unlawfully excluded plaintiff from the use and possession of that portion of plaintiff's property lying east of the fence, and have deprived her of the income from the same, by reason of which she has been damaged in the sum of $500. The petition contained a second cause of action as a basis for the injunction prayed for, but we need not detail those allegations. Plaintiff prayed that she be given possession of all her property enclosed within defendants' fence; that she recover $500 as damages; that defendants be temporarily and permanently enjoined from removing any and all fences and other improvements, or impounded water placed on the property by defendants, and that she have judgment for costs and other equitable relief.

On July 9, 1949, the defendants filed their joint and several answers, in which they denied generally all the allegations of the petition "except such as may be hereinafter specifically admitted." The answer admitted the allegations with respect to the parties and their residence,

"and that the plaintiff is the owner of the following described real estate situated in Harvey County, Kansas, to-wit:

"The West Half (W/2) of the Southwest Quarter (SW/4) of Section Nineteen (19), township Twenty-four (24) South, Range Two (2) East of the Sixth Principal Meridian.

"and that the defendant, Courtney B. Davis, Inc., is the owner and in possession of the following described real estate situated in Harvey County, Kansas, to-wit:

"The East Half (E/2) of the Southwest Quarter (SW/4) of Section Nineteen (19), Township Twenty-four (24) South, Range Two (2) East of the Sixth Principal Meridian.

"THIRD: Further answering, these defendants specifically deny that the plaintiff is the owner of and/or entitled to the possession of the west 58 feet of the East One-Half of the quarter section above described."

The answer further alleged that in January, 1936, the defendant, Courtney B. Davis, for a valuable consideration, received a warranty deed covering the east half of the quarter section from persons named, who had a plain and connected title in law and equity, as shown in the office of the register of deeds of Harvey county, and went into the open, notorious, peaceable, adverse and hostile possession in contemplation of making valuable improvements, and that he caused the quarter section previously described to be surveyed and the line between the east and west halves thereof to be established; that the survey was made by one Mavity, who was then the duly appointed county surveyor of Harvey county, at some time in 1936, which survey established the dividing line equidistant from the east and west boundaries of the quarter section, allowing the east and west halves thereof an equal number of acres; that relying upon the legality and accuracy of the survey the defendant, Courtney B. Davis, expended large sums of money in making lasting improvements immediately to the east of the line so fixed by the survey as made by Mavity. It was further alleged that on July 31, 1937, the defendant, Courtney B. Davis, for a valuable consideration, conveyed the east half of the quarter section to the defendants, Courtney B. Davis, Inc., a corporation, which is now the owner thereof, which corporation continued to make improvements on the land; that at all times subsequent to the acquisition of the east half of the quarter section by Courtney B. Davis, and prior to the first day of September, 1945, a period of more than nine years, plaintiff was in the possession of the west half of the quarter section and the defendants were in the actual, open, notorious and peaceful possession of all the real estate, as alleged to be occupied by the defendants, as set forth in plaintiff's petition. Defendants further alleged that they under-

stand or are informed and therefore allege the fact to be that plaintiff had knowledge of the survey made by Mavity, saw the fence and other improvements placed upon the land in controversy, and for approximately nine years the plaintiff sat by and by inactivity passively acquiesced in the making of the improvements. Defendants admit that since 1936 they have made lasting and permanent improvements upon the west fifty-eight feet of defendants' property, to a value which is stated, and made further allegations as to the reasonable value of the property without improvements and with the improvements defendants have placed thereon, and allege:

"That by reason of the above and foregoing the plaintiff has been guilty of laches and is estopped to deny the right, title, interest and estate of the defendant, Courtney B. Davis, Inc., in and to that particular strip of land approximately 58 feet in width together with the improvements thereon lying along the west side of the above described property.

"WHEREFORE, The defendant, Courtney B. Davis, Inc., prays for an order of the Court adjudging and decreeing it to be the owner of the East Half of the Southwest Quarter of Section 19, Township 24 South, Range 2 East in Harvey County, Kansas, including a strip of land approximately 58 feet in width lying along the west line of the East Half of said quarter section upon which said defendants' permanent and lasting improvements are located as referred to in the plaintiff's petition and barring, enjoining and excluding the plaintiff from having or claiming to have any right, title, interest or estate therein.

"These defendants further pray that in the event a judgment is entered herein dispossessing the defendant, Courtney B. Davis, Inc., of the above described strip of land, that it recover under the provisions of the occupying claimant's law for all permanent lasting improvements, that a jury be empaneled to assess the valuation of the improvements so made, and that this Court make all orders necessary for the carrying out of said occupying claimant's act in effect."

On July 7, 1949, plaintiff filed a motion for judgment on the pleadings, in which she specifically waived all the damages prayed for in her petition other than the cost, and moved the court to render judgment on the pleadings in her favor and against the defendants for the reason that defendants' answer states no defense to plaintiff's petition. This motion was duly heard, and on January 5, 1950, was sustained by the court and judgment was rendered for plaintiff in accordance with the motion therefor. In due time defendants appealed from the judgment.

In this court, for establishing the rules of law applicable to a judgment on the pleadings, appellants quote the following from *Smith v. City of Emporia,* 168 Kan. 187, 188, 211 P. 2d 101:

". . . a motion for judgment on the pleadings is tantamount to a demurrer, admits all facts well pleaded by the opposing party, and is only sustained when, notwithstanding such facts, it clearly appears the party making the motion is entitled to judgment."

And from *Ewing v. Pioneer Nat'l Life Ins. Co.,* 158 Kan. 371, 147 P. 2d 755:

"A motion for judgment on the pleadings cannot be sustained when issues of fact upon which a valid judgment might be based are joined by the pleadings."

Counsel for appellee concede these authorities lay down the correct rule to be followed by the court in ruling upon a motion for judgment on the pleadings.

Counsel for appellants argue that the issues were joined by defendants' answer in four separate instances.

"1. By the specific denials of the plaintiff's title and right to possession of the 3½ acres of land involved in this lawsuit."

The point is not well taken. The answer specifically admitted that plaintiff was the owner of the west half of the quarter section and that the defendants were the owners of the east half of the quarter section. The case of *Neiman v. Davis,* 166 Kan. 246, 200 P. 2d 322, between these same parties, while it was dealing primarily with a survey of the west half of the quarter section as distinct from trying title, definitely fixed the boundary line between the west half and the east half of the quarter section. In the opinion, at page 255, it was said:

"The entire section was patented to the Atchison, Topeka and Santa Fe Railroad Company, the patent disclosing clearly that the section contained 654 acres. On September 28, 1883, the company conveyed by warranty deed to Haines, predecessor in title of Davis, five separate tracts including the Davis land, containing in all 400.16 acres more or less 'according to the United States Survey.' No showing is made that each tract did not contain the statutory quantity of eighty acres, and we assume that it did so. The excess of 16/100 acres, even if added to the Davis land, would not materially alter its boundaries. However, later and on July 3, 1885, the railroad company conveyed by warranty deed to Whitcroft, predecessor in title to Neiman, the west half of the southwest quarter of the particular section, 'containing in all Eighty Seven 14 (87.14) acres more or less according to the United States Survey.' According to the government plat, and as detailed above, the quarter-quarter sections embraced in the above west half contained respectively 43.54 and 43.60 acres, or the total of 87.14 acres. It thus appears that the railroad company, the last common owner of the entire southwest quarter, conveyed the east and west halves as containing the actual acreage as shown on the government plat. No subsequent conveyance could or did change the division so made, and that it was conformable to the survey and plat may not be denied."

In that case as in this one defendants relied upon the Mavity survey. The evidence in the former case disclosed that Mavity had not given notice of his survey to anyone. He had simply been requested by defendant Davis to make the survey. The survey had no legal standing, a matter thoroughly determined in the former case. It is useless to argue here that it has any legal standing. In their answer in this case defendants denied "that the plaintiff is the owner of and/or entitled to the possession of the west fifty-eight feet of the east one half of the quarter section." That was a fruitless denial. In plaintiff's petition she did not claim to own anything in the east half of the quarter section. In both the cases it is clear that plaintiff was claiming to own this strip of land, variously stated as being sixty feet wide or fifty-eight feet wide. Plaintiff in her petition asserted ownership and a right of possession to the west half of the quarter section. In their answer defendants made no specific allegation that they were entitled to or had any right of possession to any portion of the west half of the quarter section.

"2. By the general denial contained in the defendants' answer and the affirmative allegations of ownership as set out in the answer."

The general denial of the allegations of plaintiff's petition was "except such as may be hereinafter specifically admitted." The answer then proceeded to admit that plaintiff was the owner of the west half of the quarter section. There is no place in the answer where there is an allegation that defendants were the owners of any portion of the west half of the quarter section. Counsel for appellants in their brief do talk about the Mavity survey, but in *Neiman v. Davis,* supra, at page 252, the court ruled that:

"It thus appears the division line between the two halves as fixed by Mavity was about 58 feet west of the line as fixed by Craig."

and went further and held that the Craig survey properly determined the true boundary line between the east half and the west half of the quarter section, and that the real estate lying to the west of the line, as established by Craig, is the west half of the quarter section. The result is that this point is not well taken.

"3. By allegations of fact contained in the answer squarely within the provisions of the Occupying Claimant's Act."

The pertinent provisions of the Occupying Claimant's Act (G. S. 1935, 60-1901) read:

"In all cases, any occupying claimant, being in quiet possession of any lands or tenements for which such person can show a plain and connected title in law

or equity derived from the records of some public office; or, being in quiet possession of and holding the same by deed, devise, descent, contract, bond or agreement from and under any person claiming title as aforesaid, . . . or by deed duly authenticated and recorded; . . . shall not be evicted or thrown out of possession by any person or persons who shall set up and prove an adverse and better title to said lands until said occupying claimant, . . . shall be paid the full value of all lasting and valuable improvements made on said lands by such occupying claimant . . ."

It is clear that the strip of land in question lies in and along the east edge of the west half of the southwest quarter. Defendants by their answer do not claim title to any land in the southwest quarter of the section. Before appellants could claim the benefits of the Occupying Claimant's Act they must allege two things: *First,* that they were in quiet possession of the property. The answer may be construed as making that allegation. *Second,* they must also plead a plain and connected title derived from the public records or hold possession under some person showing a plain and connected title derived from the public records. Since they claim no title to the west half of the quarter section they do not come within the provisions of the act.

"4. That the allegations of fact contained in the answer, if true, were sufficient to constitute laches on the part of plaintiff and estoppel."

The allegations referred to are to this effect: That plaintiff had knowledge of the Mavity survey and the erection of a fence during the spring or summer of 1936 and had personal knowledge of the substantial and permanent improvements being erected immediately east of the line as fixed by Mavity, and had knowledge that defendants were in possession of the real estate, and that during the period of about nine years the plaintiff sat by and inactively and passively acquiesced in the making of the improvements by defendants. Under the authorities that is not enough. The nine years' possession under a claim of title is inadequate to establish title by adverse possession. (See, *Beeler v. Sims,* 93 Kan. 213, 144 Pac. 237; *Steinbruck v. Babb,* 148 Kan. 668, 84 P. 2d 907.) Mere silence on the part of the plaintiff does not work an estoppel against her. Before plaintiff can be held to have lost her land by estoppel she must have done something or concealed something from defendants which they did not know, upon which defendants relied in going upon her place and making improvements. She is charged here with nothing but "inactivity." Plaintiff must have had knowledge of facts of which defendants were ignorant. In this case the reverse is true. Davis

moved the east line fence on plaintiff's land. The plaintiff did not. She may have had knowledge of Mavity's survey. Certainly Davis did. She may have had constructive knowledge that the survey was wrong. Davis had exactly the same knowledge. Davis knew as much or more about the Mavity survey than the plaintiff did. He knew the survey was made without notice to plaintiff, and in fact secretly as to her. If there is any concealment here it was by the defendants. (See, *Chellis v. Coble*, 37 Kan. 558, 15 Pac. 505; *Harris v. Deffenbaugh*, 82 Kan. 765, 109 Pac. 681; *Bank v. Commission Co.*, 113 Kan. 545, 215 Pac. 828; 21 C. J. 1150; 31 C. J. S. 301.) The result is the case of *Neiman v. Davis*, supra, settled the boundary line between the west half and the east half of the quarter section in question. Plaintiff alleged that she owned the west half of the quarter section, and defendants admitted that allegation. Their answer claimed no title nor right to possession of any portion of the west half of the quarter section. The allegations of the answer do not bring defendants within the statute pertaining to occupying claimants. Inactivity on the part of plaintiff did not constitute laches or estoppel which denied her right to recover.

The judgment of the trial court is affirmed.

WERTZ, J., not participating.