No. 63,064

MID-AMERICA PIPELINE COMPANY, *Appellant*, v. GALEN F. WIETHARN, *et al.*, *Appellees.*

(787 P.2d 716)

Opinion filed March 2, 1990.

*Leonard J. Johnson*, of Morrison, Hecker, Curtis, Kuder & Parrish, of Kansas City, Missouri, argued the cause, and *David C. Stout*, of the same firm, and *Tim Ryan*, of Ryan & Ryan, P.A., of Clay Center, were with him on the briefs for appellant.

*Charles S. Arthur, III*, of Arthur, Green, Arthur, Conderman & Stutzman, of Manhattan, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Petitioner, Mid-America Pipeline Company (Mid-America), brought this action seeking a mandatory injunction ordering appellees to remove four buildings constructed over petitioner's pipeline easement and a preventive injunction prohibiting further construction. The trial court found that appellees violated the easement and ordered construction be halted but, instead of ordering the buildings removed, ordered that the pipelines be relocated with petitioner paying the majority of the costs. The Court of Appeals affirmed the district court in an unpublished opinion filed August 4, 1989. We granted Mid-America's petition seeking review of the decision of the Court of Appeals approving the order to relocate the pipelines.

Petitioner Mid-America is a common carrier pipeline company that transports LPG products and anhydrous ammonia through high-pressure pipelines. In 1960, it was granted an easement to construct, operate, and maintain pipelines across realty presently owned by appellees. Mid-America constructed three pipelines

pursuant to the easement before appellees acquired the realty. The easement provides, in part:

"It is agreed that the pipeline or pipelines to be laid under this grant shall be constructed at sufficient depth below the surface of the ground to permit normal cultivation, and Grantor shall have the right to fully use and enjoy the above described premises, subject to the rights herein granted.

"Grantee shall have the right to clear and keep clear all trees, undergrowth and other obstructions from the herein granted right of way, and Grantor agrees not to build, construct or create, nor permit others to build, construct or create any buildings or other structures on the herein granted right of way that will interfere with the normal operation and maintenance of the said line or lines."

The Wietharns purchased the property in 1971. Although the previous owner of the real estate testified that the pipeline easement was discussed at the time the Wietharns examined the property and decided to buy it, Galen Wietharn testified that he did not realize the pipelines existed when he acquired the farm. Nonetheless, the easement was properly recorded with the register of deeds in Clay County at the time the Wietharns purchased the farm.

The Wietharns began to develop a hog operation in 1973 by building a finishing floor, which had a concrete slab floor located over the easement. In 1978, Galen Wietharn constructed a second building to hold the sows until they had litters, followed by a third building, a grower/finishing building. Both buildings were located over the easement. A fourth building, built in the mid-1970s and referred to in the record as building No. 4, was not over the easement. Building No. 5, a farrowing house or maternity ward, was built in 1983 over the easement. The Wietharns built four additional structures in the same area that were not over the easement. Finally, in 1987, when the Wietharns were in the process of building the 10th building in this complex, Mid-America filed suit asking for a temporary and a permanent injunction to stop construction over the easement. The district court issued a temporary restraining order. The Wietharns answered the petition and counterclaimed, asking the district court to order Mid-America to remove the pipelines from under the Wietharns' buildings at Mid-America's expense.

The parties stipulated that the easement existed when the Wietharns purchased the property and that the Wietharns constructed

buildings on the easement in 1973, 1978, and 1983. A trial to the court was held on May 26 and 27 and on July 14, 1988. Galen Wietharn testified that he first became aware of the presence of the pipelines in 1973 during construction of building No. 1, when a trencher hit a pipeline while digging a hole for installation of the water line. Mid-America patched the line. At the trial, Galen Wietharn testified that Jim Patterson, a terminal operator for Mid-America, came to the farm whenever construction occurred between 1973 and 1987, except for once when Patterson apparently was on vacation. Galen noted that Patterson was always concerned about the pipelines and informed the Wietharns that they should not be building over the easement. According to Galen, Patterson stated: "Just wish you wouldn't build on it. Damn, this pipeline is dangerous. It might blow up." This comment was repeated "a bunch of times" and Patterson was always frightened of the construction over the pipelines.

Patterson testified that, when he was called to the Wietharns' farm, he refused to spot lines if this assisted building a facility over the pipelines. Each time Patterson became aware that the Wietharns were building over the pipelines, he reported this to his superiors. In 1978, when he reported that the Wietharns were constructing building No. 3, Patterson's superiors told him to be sure that the Wietharns knew that what they were doing was illegal. Patterson testified that the company was concerned from the beginning and, over time, concluded that it had no choice but to sue the Wietharns to stop their construction. Patterson also recognized that pilots flew over the pipeline easement at least every other week and probably would have reported the construction.

Kent Fisher, also an employee of Mid-America, went to the farm in 1983 to put up warning and caution signs along the easement, both inside and outside of the buildings. Fisher indicated he knew Galen Wietharn's son, Bob, from high school. When Bob told Fisher that they intended to build more buildings over the easement, Fisher tried to convince Bob not to do so because, if a leak occurred, it would be necessary to dig up the pipelines, which would involve digging through the buildings. Fisher indicated Bob Wietharn seemed to think he was joking

about the seriousness of the problem of building over the pipelines.

The manager of the central division of Mid-America, which included the Wietharns' farm, became aware in the early 1980s that the Wietharns were building over the lines. According to him, it was not a policy of Mid-America to allow people to build over the lines. Previously, Mid-America always convinced people not to build over the pipelines after talking with them. Mid-America sued in 1987 because the Wietharns ignored Mid-America's warning not to build over the easement and that was the only way Mid-America knew to stop the construction.

In a journal entry filed on October 4, 1988, the trial court found Mid-America was entitled to an injunction to halt construction of additional structures on the pipeline easement but refused a mandatory injunction to remove the buildings already constructed. Considering equitable principles, the district court ordered that the pipelines be moved with the Wietharns paying the lesser of $50,000 or 40% of the relocation costs. Mid-America appealed the decision of the district court and the Wietharns filed a notice of cross-appeal concerning the portion of the pipelines' relocation costs assessed against them.

Mid-America raises several issues in this appeal; however, we need address only the first as it is dispositive of this appeal. Appellant contends that the district court erred in denying injunctive relief to remove buildings constructed over the easement and instead ordering the pipelines moved.

At trial, the Wietharns argued that the easement was unclear in stating that construction was not permitted "that will interfere with the normal operation and maintenance of the said line or lines." The Wietharns argued they were not aware of the easement when they began constructing building No. 1. When Mid-America failed to halt construction while the Wietharns built this and additional buildings, they believed this construction did not "interfere with the normal operation and maintenance of" the lines. In their cross-appeal, the Wietharns do not challenge the decision by the trial court that they violated the easement. Failure to challenge this issue on appeal precludes any argument by the Wietharns that they did not violate the easement.

Mid-America sought an injunction to stop further construction and to remove buildings located on the easement. An injunction is an order to do or refrain from doing a certain act. K.S.A. 60-901. Injunctions apply to future events rather than to past or completed acts. Mandatory injunctions require performance of an act, while preventive, or prohibitory, injunctions require a party to refrain from doing an act. To obtain injunctive relief from prospective injury, a party must show that a reasonable probability of injury exists and that an action at law will not provide adequate remedy. Mere apprehension or possibility of wrong or injury ordinarily does not warrant the granting of an injunction. *State ex rel. Stephan v. Pepsi Cola Gen'l Bottlers, Inc.*, 232 Kan. 843, 845, 659 P.2d 213 (1983); *Clawson v. Garrison*, 3 Kan. App. 2d 188, 195-96, 592 P.2d 117 (1979).

The district court incorrectly concluded that it did not have the power to enter a mandatory injunction requiring the Wietharns to remove the buildings already built on the right-of-way. A mandatory injunction is an extraordinary remedy used to effectuate full and complete justice by commanding the performance of a positive act. Although the granting of a mandatory injunction is governed by the same rules as the granting of preventive injunctions, courts are more reluctant to grant a mandatory injunction. Therefore, usually only prohibitory injunctions are entered. A party seeking a mandatory injunction must clearly be entitled to that form of relief. *Prophet v. Builders, Inc.*, 204 Kan. 268, 273, 462 P.2d 122 (1969).

The decision to grant or deny a mandatory injunction rests within the discretion of the trial court and should not be disturbed on appeal unless an abuse of discretion is shown. Because an injunction is an equitable remedy, equitable principles apply to the decision of whether to grant a mandatory injunction. In *Cave v. Henley*, 125 Kan. 214, 217, 264 Pac. 25 (1928), this court stated:

"[W]here the interference of a court of equity would cause the encroaching defendant ruinous and needless loss and expense, and where equity's refusal to interfere would cause little or no practical inconvenience to the party sustaining the encroachment, and where all damage to the latter could be adequately compensated by a plain remedy at law, the rule is that the

aggrieved party will be remanded to his action at law, and relief by mandatory injunction denied."

In *Cave*, the evidence at trial indicated that the only encroachment was cement that seeped over onto plaintiff's property along the lot line and hardened before defendant had an opportunity to remove it. The court concluded that the damage sustained by plaintiff was small compared to the cost of removal of the building and that plaintiff did not show he was without adequate remedy at law for the encroachment. 125 Kan. at 217-18.

In denying the mandatory injunction here, the trial court relied upon the decision in *State ex rel. Stephan v. Pepsi Cola Gen'l Bottlers, Inc.*, 232 Kan. 843, which, as the Court of Appeals correctly pointed out, is distinguishable from the situation at hand. In *Pepsi Cola*, plaintiff challenged an advertising promotion that had ceased. Because no evidence indicated a similar campaign would be conducted in the future, the issuance of a mandatory injunction would not have been appropriate. 232 Kan. at 844-45. Here, the Wietharns' construction of buildings on Mid-America's easement created a continuing violation that did not cease with the completion of the building. Furthermore, the Wietharns indicated their desire to build additional buildings over the right-of-way. The issuance of a mandatory injunction was appropriate to protect Mid-America's rights under the easement while a preventive injunction could be issued to prohibit further construction on the easement.

A mandatory injunction was issued in *Aladdin Petroleum Corporation v. Gold Crown Properties, Inc.*, 221 Kan. 579, 561 P.2d 818 (1977), where the grantor or seller of the real estate preserved a right-of-way easement for access to his property. The court recognized that the creation of an easement of a definite width, length, and location controlled, and any additional attempt to determine reasonableness of the width was inconsistent with the nature of the easement granted. 221 Kan. at 585.

The court in *Aladdin* noted that an obstruction or disturbance of an easement is anything that wrongfully interferes with the privilege to which the owner of the easement is entitled by making its use less convenient and beneficial than before. To be actionable, however, the interference with the easement must " 'be of a material character such as will interfere with the rea-

sonable enjoyment of the easement.' " 221 Kan. at 588 (quoting 28 C.J.S., Easements § 96, pp. 778-79). Thus, the owner of a right-of-way has no right to erect buildings on the right-of-way even if their presence does not interfere with its use as a mere passageway. The court noted:

" 'The rights of the owner of the servient estate in this regard are limited to the erection of such structures as are compatible with the rights of those entitled to use the way. *If by the terms of the grant or reservation the way must be of a certain width, no structures can be erected which encroach on the width stated.* Where, however, there is merely a general undefined right of way, it is only necessary that there should be sufficient space left to afford a convenient passage.' " *Aladdin*, 221 Kan. at 588 (quoting 28 C.J.S., Easements § 97, p. 779).

The court held that construction of carports over a portion of the easement for passage of a definite width wrongfully impaired and interfered with the privilege of passage held by the owner of the definite easement. Plaintiff was entitled to a mandatory injunction ordering the carports removed. 221 Kan. at 588.

The easement here provided for "a right of way sixty (60) feet in width, said right of way being twenty (20) feet on the North/West side and forty (40) feet on the South/East side of a line (to be) (as) surveyed and definitely established by the centerline of the initial pipeline constructed." This was a right-of-way of a definite width. The Wietharns' buildings were wrongfully constructed on the easement. The Court of Appeals correctly found that the trial court erred in concluding that mandatory injunctive relief was not available.

Having determined that the district court had the *power* to order the buildings removed, the question arises whether it could order alternative remedies. Because circumstances allowing the issuance of a mandatory injunction arise under equitable principles when remedies at law are not available to remedy the wrong, the trial court could fashion an appropriate solution to the problems that arose. To the trial court, the appropriate solution was to issue a mandatory injunction which required Mid-America to move the pipelines and, concurrently, required the Wietharns to grant Mid-America a new easement and to pay up to 40% of the cost or a maximum of $50,000 for movement of the pipes.

The district court limited Mid-America's recovery for the Wietharns' violation of the easement because Mid-America did not file a lawsuit immediately to enjoin the Wietharns from infringing upon the easement but, instead, allowed them to continue building their hog facility. Also, because the 10 buildings were situated for maximum efficiency in the operation of pig production, removal of the four buildings located over the pipeline right-of-way would damage the entire operation, involving more than just the expense of moving the buildings situated on the easement. The Court of Appeals concluded that, even though the trial court erroneously found that no power existed to issue a mandatory injunction, Mid-America's delay in filing suit still provides grounds for denying a mandatory injunction ordering removal of the buildings.

Although the decisions by the district court and the Court of Appeals are confusing in their use of estoppel, the Court of Appeals correctly noted that, although the parties discuss at length the application of the principle of equitable estoppel, the doctrine was not applied because Mid-America was not precluded from recovery. However, the Court of Appeals approved the trial court's consideration of Mid-America's delay when determining the interests of the parties in this case, noting: " 'Equity aids the vigilant and not those who slumber on their rights.' " Quoting *Rex v. Warner*, 183 Kan. 763, 771-72, 332 P.2d 572 (1958). Relief may be denied " 'where the individual, having knowledge of rights which he may assert, has failed to act, with the result that another has acted upon the assumption that such rights do not exist or will not be asserted.' " Quoting 27 Am. Jur. 2d, Equity § 130, pp. 658-59.

Here, the decision of the appropriate relief to be granted rested within the discretion of the trial court and should not be disturbed on appeal unless abuse of discretion is shown. In determining whether a trial court abused its discretion, an appellate court must consider whether no reasonable person would agree with the trial court. If any reasonable person would agree, then the appellate court should not disturb the trial court's decision. *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988).

The problem here is that the trial court incorrectly found that it had no power to issue a mandatory injunction but, by ordering

the pipelines moved, it did issue a mandatory injunction. Furthermore, the trial court used principles of equitable estoppel in formulating the remedy apparently without realizing that equitable estoppel would bar recovery by Mid-America. Finally, the trial court ignored repeated attempts by Mid-America employees, short of filing a lawsuit, to convince the Wietharns to stop further building and to inform them of the danger being created by building over the right-of-way.

In *Neiman v. Davis*, 170 Kan. 208, 225 P.2d 124 (1950), this court concluded that mere silence by a plaintiff cannot work as an estoppel against her but, instead, plaintiff must do something or conceal something which defendants did not know. Mere inactivity is not sufficient to allow the operation of the principles of laches or estoppel. Thus, when defendants moved a partition fence several hundred feet onto plaintiff's property and made permanent improvements, plaintiff, who had not objected, was not barred in filing a lawsuit over nine years later to stop defendants from obtaining title by adverse possession.

The trial court found Mid-America's delay in asserting its claims to be "inequitable in the extreme" because it knew for 14 years that the Wietharns were constructing buildings on the easement. Although the trial court could consider Mid-America's lack of diligence, it erred in characterizing the conduct of Mid-America as doing nothing. Galen Wietharn admitted that Jim Patterson came to the property several times, was always concerned about construction over the pipelines, and was afraid the pipelines might explode. Bob Wietharn also testified that he was aware Jim Patterson was concerned that building over the pipelines was dangerous.

Mid-America argues that the trial court should not have balanced equities after finding that the easement rights were violated because the Wietharns could not claim to be innocent respondents. The easement was recorded at the time the Wietharns purchased the property; therefore, they were charged with constructive knowledge of the existence of the pipelines. Furthermore, the Wietharns struck the pipelines during construction of their first building, yet continued to build over the right-of-way for the next 14 years. Mid-America argues the trial court should

have ordered the buildings removed without further consideration of the equities.

For support, Mid-America directs this court's attention to several decisions of other jurisdictions. In *Papanikolas Bros. Ent. v. Sugarhouse Shopping Ctr. A.*, 535 P.2d 1256, 1259 (Utah 1975), the court stated:

"The benefit of the doctrine of balancing the equities, or relative hardship, is reserved for the innocent defendant, who proceeds without knowledge or warning that he is encroaching upon another's property rights. Where the encroachment is deliberate and constitutes a wilful and intentional taking of another's land, equity may require its restoration, without regard for the relative inconveniences or hardships which may result from its removal."

The restrictive covenant in *Papanikolas* involved land used for automobile parking that defendants sought to encumber by construction of a service station. Defendants argued that laches should bar enforcement by plaintiffs because a sign announcing upcoming construction of the service station was erected months earlier and plaintiffs did nothing. Plaintiffs observed construction in August of 1970, when a prefabricated building was being erected. Counsel for the parties exchanged letters during August and September of 1970, and the action was filed in March 1972. The trial court concluded that laches did not apply because plaintiffs took no action that worked to the disadvantage of defendants, and the Utah Supreme Court approved that decision.

The Washington Supreme Court upheld a trial court's refusal to balance equities when defendants built an apartment building in violation of plaintiffs' riparian rights and over plaintiffs' protest. Plaintiffs had sought a temporary injunction pending trial on the merits. That injunction was denied and defendants continued building during the period before the case came to trial. The trial court issued a mandatory injunction ordering removal of the apartment building even though the maximum possible loss to defendants greatly exceeded the possible loss to plaintiffs. In affirming the trial court, the appellate court noted: "The benefit of the doctrine of balancing the equities, or relative hardship, is reserved for the innocent defendant who proceeds without knowledge or warning that his structure encroaches upon another's property or property rights." *Bach v. Sarich*, 74 Wash. 2d 575, 582, 445 P.2d 648 (1968). *Cf. Warsaw v. Chicago Metallic Ceil-*

*ings, Inc.*, 35 Cal. 3d 564, 199 Cal. Rptr. 773, 676 P.2d 584 (1984).

We agree with Mid-America that the district court should not have ordered alternative remedies. Here, Mid-America did nothing to mislead the respondents or to misrepresent or conceal material facts. Nor did Mid-America induce respondents to erect the four buildings on the easement. In fact, it did just the opposite by repeatedly informing the respondents that they should not build on its easement. Even if Mid-America had not repeatedly warned the respondents, silence or inaction, absent misrepresentation or concealment of material facts, does not constitute estoppel. *Neiman v. Davis*, 170 Kan. 208. In addition, the respondents had constructive and actual notice of Mid-America's easement, and both parties agree the construction of the buildings on the easement created a dangerous situation that must be corrected.

Mid-America also argues its delay in filing suit does not bar the availability of relief by a mandatory injunction because the Wietharns were attempting to extinguish the easement by adverse possession. Pursuant to K.S.A. 60-503, the statutory time period for divestment of an interest in real property is 15 years. An easement is an interest that one person has in the land of another. *Potter v. Northern Natural Gas Co.*, 201 Kan. 528, 530, 441 P.2d 802 (1968). The action was filed within 15 years of when the Wietharns first began to build over the easement. Furthermore, the Wietharns continued to build over the easement up to the time Mid-America filed this suit and obtained a temporary injunction. Respondents respond that adverse possession does not apply in that respondents have not taken any interest belonging to Mid-America. Respondents contend they did not appropriate Mid-America's easement, thus depriving Mid-America of its pipeline. Respondents also contend that Mid-America's silence on adverse possession is misplaced because respondents' actions were not adverse to Mid-America's easement, arguing:

"In the present case, the Wietharns had every right to be upon the property covered by the easement, as the language of the easement did not prohibit them from coming upon the property, nor did it prohibit building per se. The only prohibition was building over the easement that would hinder normal operation or maintenance of the pipeline. This type of language in

the easement, followed by the actions of the parties, indicated that it was unclear what type of building over the pipeline would be permitted by the easement."

We do not agree. The easement clearly precludes the construction of "any buildings or other structures on the herein granted right of way that will interfere with the normal operation and maintenance of the said line or lines."

In *Smith v. Harris*, 181 Kan. 237, 311 P.2d 325 (1957), this court recognized that an easement can be terminated by adverse possession. The court, in reversing the trial court's finding that an express easement created by a written driveway agreement had been terminated, said:

"An easement may be terminated in other ways, such as by abandonment—where there must be an intention to abandon the easement and acts manifesting such intention, all of which does not appear from the record before this court. No assertion is made by the defendants that the easement has been abandoned. An easement may be terminated by adverse possession—which requires strong action on the part of the owners of the servient estate such as would entitle the owners of the dominant estate to maintain an action for obstructing their enjoyment of the easement. (28 C.J.S., Easements, § 63, p. 729.) While it is unnecessary to go into detail on this point and burden the opinion, since the trial court found specifically that the defendants had asserted rights of adverse possession against the plaintiffs or their predecessors in title for a period of less than fifteen years, the evidence in all fairness does not indicate such assertion until about April, 1950, approximately twenty-six months prior to the time this lawsuit was filed. Whether or not rights have been acquired by reason of adverse possession is a question of fact for the trial court and will not be disturbed on appeal, unless all the competent and creditable evidence compels a different conclusion. (*Tucker v. Hankey*, 173 Kan. 593, 250 P.2d 784.) We must, therefore, conclude that the express easement created by the written driveway agreement was not terminated by adverse possession." 181 Kan. at 251.

In *Rueckel v. Texas East. Transm. Corp.*, 3 Ohio App. 3d 153, 444 N.E.2d 77 (1981), plaintiffs sought damages for pine trees damaged or destroyed in the course of maintenance operations on the pipeline right-of-way carried out by defendant. Plaintiffs planted the trees, intending to eventually sell them as commercial timber for a profit, but when removed they were of no commercial value. The rights-of-way had been maintained for 25 years free and clear of trees, or other obstructions, and had been used for planting corn. The trial court determined that plaintiffs were not

entitled to grow trees along the rights-of-way, and defendant had the right to remove trees that obstructed, unreasonably burdened, and interfered with the exercise of their rights as easement owners. Although the trial court examined damages needed to compensate the plaintiffs for removal of the trees, the appellate court found this totally inconsistent with the prior findings, stating:

"If, in fact, the court is going to restrict the landowners from engaging in activities which are inconsistent with or interfere with the easement rights of the defendants, then it follows, that if the plaintiffs plant trees on their property which obstruct, unreasonably burden and interfere with the exercise of the easement, including the right to engage in appropriate pipeline maintenance operations, then the growing of such trees is inconsistent with the easement rights of defendants and is prohibited under the rights-of-way grants and plaintiffs are not entitled to compensation for the trees that are removed." 3 Ohio App. 3d at 158.

Clearly, in the present case Mid-America could have maintained an action against the respondents for obstructing its enjoyment of the easement. Thus the respondents, by constructing the buildings on the easement, asserted rights of adverse possession against Mid-America. For that reason, Mid-America's delay in taking affirmative action to stop the construction was relevant only to whether the easement was terminated by adverse possession.

Here, the trial court, having found the respondents violated the easement, mistakenly believed that it did not have the power to grant a mandatory injunction, yet it entered such an injunction by ordering that the pipelines be moved. In so doing, the trial court ignored its findings that the respondents knowingly violated the easement; that Mid-America repeatedly warned the respondents not to build on the easement; that the construction of the four buildings created a continuing danger; and that a leak occurring at this point in the pipeline could require demolition of all or part of the buildings to effect the repair. The respondents were not innocent parties acting without knowledge of the easement or the pipeline. It is difficult, if not impossible, to imagine how the construction of buildings or structures could interfere more with the normal operation and maintenance of the pipeline than the buildings constructed by the respondents in the present case. To find otherwise would render the previously quoted lan-

guage in the easement meaningless and Mid-America's rights thereunder illusory.

Since Mid-America has clearly defined rights under the easement that are recognized and protected by law, the district court should not have balanced the equities. Where, as in the present case, the remedy at law is inadequate, equity will fashion a remedy that enforces that legal right. However, in so doing, equity will follow the law and not ignore it. *Osment v. Trout*, 156 Kan. 120, 131 P.2d 640 (1942). We conclude that the district court erred by ordering that the pipeline be relocated rather than issuing a mandatory injunction ordering that the four buildings be removed from the easement.

The judgment of the Court of Appeals is reversed. The judgment of the district court is reversed, and the case is remanded with directions that the district court issue a mandatory injunction ordering the removal of the four buildings from the easement and that the respondents be enjoined from constructing any type of building or structure on the petitioner's easement.

Six, J., dissenting: My dissent is limited. I agree with the majority in the assignment to Mid-America of the rights in controversy. The financial responsibility for the resolution of the conflict is to be borne by the Wietharns. In my view, however, under the facts of this case, we should remand to the trial court for an economic determination of the costs of the alternative methods of removal—the buildings or the pipeline.

The district court reasoned that, because of the location of the ten buildings, removal of the four buildings located over the pipeline right-of-way would damage the entire hog operation. Expenses in addition to the cost of building removal would be involved. The district court crafted a solution which required Mid-America to move the pipeline, the Wietharns to grant a new easement, and the costs to be shared sixty percent by Mid-America and forty percent by the Wietharns. The Court of Appeals affirmed.

Moving a gas pipeline may or may not be a highly specialized and dangerous job. Drafting a new easement may or may not present difficulties for the scrivener. Mid-America may or may not incur downtime damages during the pipeline removal. Re-

moval of the buildings from the easement, rather than pipeline removal, may or may not result in a disproportionate cost to the Wietharns.

During oral argument, counsel for both parties agreed that either the pipeline or the buildings on the easement must be moved. Both parties are apprehensive of the current situation. What is the relative cost of effecting each method of removal? This is the question to be determined upon remand. Mid-America should not incur financial loss as a result of the Wietharns' encroachment on the easement. Because of Mid-America's future responsibility for its pipeline, Mid-America should be in control of any pipeline removal and relocation. Adequate costs for such removal and relocation should be advanced by the Wietharns.

The economic considerations and removal details are to be determined by the district court. In the event building removal is disproportionately more costly than pipeline removal, the Wietharns should not be required to pay more than is necessary to satisfactorily resolve the conflict.

HOLMES and LOCKETT, JJ., join in the foregoing dissent.