(209 P.3d 722)
No. 100,050

J.D. and VICKI FRIESS, TRUSTEES, *Appellees*, v. QUEST
CHEROKEE, L.L.C., EXPLORER RESOURCES, INC., BLUESTEM
PIPELINE, L.L.C., and QUEST MIDSTREAM PARTNERS, L.P.,
*Appellants*.

Opinion filed June 5, 2009.

*Jarrod C. Kieffer* and *David E. Bengtson*, of Stinson Morrison Hecker LLP, of Wichita, for appellants.

*W.J. Fitzpatrick*, of Fitzpatrick & Bass, of Independence, for appellees.

Before RULON, C.J., GREENE and STANDRIDGE, JJ.

GREENE, J.: Quest Cherokee, L.L.C., Explorer Resources, Inc., Bluestem Pipeline, L.L.C., and Quest Midstream Partners, L.P. (collectively Quest) appeal the district court's grant of a mandatory injunction ordering them to remove a pipeline they installed on land owned by the Friess Trust. J.D. and Vickie Friess (the Friesses) are trustees of the Steven B. Friess Irrevocable Trust (the Friess Trust).

Restricting appeal to the question of remedy, Quest argues that the district court erred in issuing a mandatory injunction because an adequate monetary remedy was available, the burden of the injunction on the defendants far outweighs any injury to the plaintiffs, and the district court failed to balance the equities. Quest seeks vacatur of the injunction and an award of monetary damages in its place. Concluding the district court properly applied the standards for injunctive relief, we affirm.

### Factual and Procedural Background

The Friess Trust owns a parcel of land in Labette County that was being farmed by J.D. and his son, Steven, the beneficiary of the Friess Trust, at all times material to this appeal. Steven exercised general control of day-to-day farming operations and paid the taxes and farming expenses for the land, but the trustees were vested with powers of management and control of the land.

Quest began laying a natural gas pipeline in Neosho County in the spring 2004, and it retained Permian Land Company to perform right-of-way acquisition for the line. It was the common practice to identify the landowner, send a package of easement documentation, and obtain a written easement from the landowner before beginning line placement on the landowner's property.

The Friesses received their letter from Permian in late August 2004, including the proposed terms of an easement, the appropriate legal instrument for execution, and a map of the proposed system. The facts are disputed regarding the meetings and conversations that ensued thereafter, but it is undisputed that the Friesses made it clear they wanted a gas production lease as a part of the deal. In late October 2004, the Friess Trust received a proposed oil and gas lease on the parcel from Quest, but it failed to contain any of the terms that Steven claims he had discussed and demanded in his conversations with Permian.

Conversations among the parties continued until the Permian representative claims that Steven told him, "I'm not going to hold those guys up." Steven denies making any such statement, recalling instead that he continued to insist on the gas production lease with terms as he had requested. In any event, the Permian representative informed Quest that it should begin preparing the Friess Trust land for the pipeline installation. Permian sent a check, dated December 17, 2004, payable to the Friess Trust, in the amount of $3,200—Permian's initial offer for the easement. The Friesses did not contact Quest or Permian about the check, nor did they negotiate the check. The pipeline was apparently installed by Quest sometime between December 2004 and January 2005.

Steven discovered the completed pipeline in the spring 2005. He testified that there was construction waste around the pipeline

area, that construction had disturbed rocks on the surface, and that the construction "pretty much destroyed" the land for the length of the pipeline on the Friess Trust land. Steven stated that although the pipeline did not interfere substantially with farming operations, it did disrupt the flow of waterways on the land.

Steven was upset by the discovery of the pipeline and contacted a number of people at Quest to resolve the situation. Steven eventually met Quest's vice president of pipeline development. The first meeting between them consisted primarily of fact-finding by Wilhite, who testified that at that point he was unaware of the trust ownership of the land or of the Friesses' demand for a gas production lease. Notably, this Quest officer did not indicate any belief that Quest already held a valid easement. Ultimately, Steven offered to grant Quest an easement for $100,000, but no agreement was reached. When subsequent meetings between the parties failed to resolve their differences, the Friess Trust brought suit for injunctive relief in November 2006.

After a bench trial, the district court found that Steven had neither actual nor apparent authority to consent to the easement to Quest and that the construction of the pipeline was a trespass on the Friess Trust land. The court granted the Friess Trust a mandatory injunction requiring removal of the pipeline but declined to award punitive damages. Quest appeals.

### Did the District Court Err in Granting a Mandatory Injunction Under These Circumstances?

Quest argues on appeal that the district court improperly applied the factors required for the award of injunctive relief. Specifically, Quest argues the Friess Trust had an adequate remedy at law and that the burden of the injunction on Quest far outweighed any injury to the Friess Trust.

The granting of an injunction is equitable in nature and involves the exercise of judicial discretion. Absent manifest abuse of that discretion, an appellate court will generally not interfere. Where an appeal frames issues of law, however, including the threshold legal requirements for injunctive relief in a specific case, a de novo

standard of review applies. *Persimmon Hill First Homes Ass'n v. Lonsdale*, 31 Kan. App. 2d 889, 892, 75 P.3d 278 (2003).

Here, the remedy requested and awarded was a mandatory injunction, which is to be distinguished from a preventive or prohibitory injunction. Mandatory injunctions require performance of an act, while preventive or prohibitory injunctions require a party to refrain from doing an act. *Mid-America Pipeline Co. v. Wietharn*, 246 Kan. 238, 242, 787 P.2d 716 (1990). Our Supreme Court has described a mandatory injunction as follows:

"A mandatory injunction is an extraordinary remedy used to effectuate full and complete justice by commanding the performance of a positive act. Although the granting of a mandatory injunction is governed by the same rules as the granting of preventive injunctions, courts are more reluctant to grant a mandatory injunction. Therefore, usually only prohibitory injunctions are entered. A party seeking a mandatory injunction must clearly be entitled to that form of relief. [Citation omitted.]" *Wietharn*, 246 Kan. at 242.

The general rules for granting a preventive or prohibitory injunction were set out by this court in *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287 (1986). The court stated that there are four elements that a movant must prove to obtain injunctive relief:

" '(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.' [Citations omitted.]" 11 Kan. App. 2d at 462.

As noted in *Wietharn*, these four elements also provide the basic analytical framework for the granting of a mandatory injunction. See 246 Kan. at 242. *Wietharn*, however, created an important exception to the four-prong analysis by recognizing that a district court may forego the "balanc[ing] of the equities" between the parties when the party seeking the injunction has "clearly defined rights . . . that are recognized and protected by law" and that party otherwise satisfies the prerequisites for injunctive relief. 246 Kan. at 251.

## *Did the Friesses Have An Adequate Remedy at Law?*

Quest initially contends that the Friess Trust had an adequate remedy at law, thus precluding injunctive relief. Quest's argument is that because the pipeline did not hinder the use of the land for farming purposes, the Friess Trust has not been otherwise injured and could be compensated for the use of the land by the $3,200 payment initially proposed for an easement by Quest.

The district court considered and rejected this argument, stating:

"Here, no evidence was offered of the surface damages, and the only evidence of the value of the easement was the defendant's original offer to $3200 which has been clearly rejected by the plaintiffs. To follow [Quest's] suggestion and order the plaintiff receive $3200 in damages would have the effect of granting a private condemnation, would serve as terrible precedent, and would be, in the Court's opinion, completely unreasonable and unfair."

In short, we agree with the district court. The construction on landowner's property of any structure without any easement agreement has been recognized as a continuing violation of the landowner's rights that does not cease with the completion of the structure and generally cannot be compensated by monetary damages. See *Wietharn*, 246 Kan. at 243-44 (construction of buildings on another's easement created a continuing violation that did not cease with the completion of the construction and mandatory injunction appropriate). This principle is consistent with the general principle that legal remedies are inadequate to redress ongoing or continuing violations. See *Mid-America Pipeline Co. v. Lario Enterprises, Inc.*, 942 F.2d 1519, 1528-30 (10th Cir. 1991).

Quest relies exclusively on *Cave v. Henley*, 125 Kan. 214, 264 Pac. 25 (1928), where our Supreme Court upheld the district court's refusal to award injunctive relief for an encroachment on neighboring land by a basement wall. We decline to follow *Cave* because it fails to provide an analytical platform that would survive or suggest a distinction with the more recent decision of our Supreme Court in *Wietharn*. Where there has been shown an ongoing or continuing violation of a landowner's rights by the construction of trespassing structures, the general rule is that legal remedies are inadequate and that injunctive relief is appropriate. Our Supreme

Court embraced this general rule in *Wietharn*, and we embrace it here. Moreover, the only legal remedy suggested by Quest, payment of the initial offer for an easement, fails to establish any true measure of damages where the payment was merely an initial offer and was clearly rejected as insufficient by the landowner. The district court did not err in concluding there was no adequate remedy at law for the Friess Trust under these circumstances.

### *Should the District Court Have Balanced the Equities Before Awarding the Injunctive Relief?*

Quest next argues that the district court erred in granting a mandatory injunction because the damages to be incurred by Quest as a result of the injunction outweigh the injury to the trust land caused by the pipeline. Quest does not contest the district court's finding that the pipeline was a trespass on the Friess Trust land; it limits its argument to the issue of remedy.

We acknowledge that the general rules for granting injunctive relief include proof that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party or parties. As set forth above, this is one of four factors to be considered in granting injunctive relief. *Wichita Wire,* 11 Kan. App. 2d at 462; see *Wietharn,* 246 Kan. at 242-46.

The district court departed the strict application of the *Wichita Wire* factors, however, relying on *Wietharn* for refusing to balance the equities. In its memorandum decision, the district court quoted from the Supreme Court's decision in *Wietharn,* 246 Kan. at 251:

"Since Mid-America [the aggrieved landowner] has clearly defined rights under the easement that are recognized and protected by law, the district court should not have balanced the equities. Where, as in the present case, the remedy at law is inadequate, equity will fashion a remedy that enforces a legal right."

In establishing this exception to the general rule requiring a balancing of equities for injunctive relief, our Supreme Court considered cases from other jurisdictions that held: " 'The benefit of the doctrine of balancing the equities, or relative hardship, is reserved for the innocent defendant who proceeds without knowledge or warning that he is encroaching upon another's property rights.' " 246 Kan. at 247. Where the landowner has done nothing to mislead

the trespasser or has warned the trespasser that construction would violate the landowner's rights and the trespasser has actual and constructive knowledge of the terms of an express easement with clear rights, there need not be any balancing of equities before issuing a mandatory injunction. See 246 Kan. at 248. In *Wietharn*, the court stated that to rule otherwise would render the terms of the easement "meaningless and Mid-America's rights thereunder illusory." 246 Kan. at 250-51.

Quest argues this exception is not applicable here because it "did not know [it] did not have permission to install the pipeline, nor [was it] repeatedly warned that [it] was violating Plaintiffs' rights by installing the pipeline." We view these assertions as implicit challenges to the district court's factfinding, but we conclude the facts found by the district court were supported by substantial competent evidence.

The district court found that no easement was granted to Quest, that Steven Friess had neither express nor implied authority to grant consent for the pipeline construction, and that regardless of any such authority, there was never a meeting of the minds as to a pipeline easement because the Friesses demand for a gas production lease was never met. Accordingly, the district court concluded that Quest had no authority to install the pipeline across Friess Trust property. These findings are supported by substantial competent evidence in the record and have not been properly challenged by Quest on appeal. Moreover, we find it incredulous that a company in the pipeline business would think it innocent conduct to proceed to construct line on another's land based solely on an "agent's consent" and without a written easement agreement. See *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 488, 15 P.3d 338 (2000) (an easement is an interest in real property and is only enforceable if it has been reduced to writing). We agree with the district court in characterizing the conduct of Quest as "either foolish or negligent." Just as in *Wietharn*, 246 Kan. at 251, Quest proceeded with knowledge of its encroachment and is entitled to no balancing of equities. See *Lario Enterprises*, 942 F.2d at 1525, 1530.

Quest also argues the district court erred in failing to follow *Southern Star Central Gas Pipeline, Inc. v. Cunning*, 37 Kan. App. 2d 807, 816-18, 157 P.3d 1120 (2007), where a panel of this court distinguished and refused to apply *Wietharn's* exception because the defendants were "completely innocent of any wrongdoing." Obviously, *Southern Star* does not apply here because Quest was not "completely innocent of any wrongdoing" based on the district court's fully supported fact findings discussed above.

Finally, we note that the district court characterized Quest's conduct as "foolish and very negligent," and Quest appears to be asking this court to balance the equities in its favor so that it might escape the consequences of its own negligence in failing to ascertain whether it had in fact obtained an easement across the Friess Trust land. " 'Equity cannot be invoked to relieve one from the consequences of his own negligence.' " *Harms v. Burt*, 30 Kan. App. 2d 263, 267, 40 P.3d 329, *rev. denied* 274 Kan. 1111 (2002) (quoting *Kuhn v. Bank*, 74 Kan. 456, 458, 87 Pac. 551 [1906]).

For all of these reasons, we conclude the district court did not err in applying the *Wietharn* exception and in refusing to balance the equities before awarding mandatory injunctive relief to the Friess Trust.

Affirmed.