NOT DESIGNATED FOR PUBLICATION

No. 118,763

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GBRB PROPERTIES, LLC,
*Appellant*,

v.

PATRICIA A. HILL and DAVID L. HILL,
*Appellees*,

SERGIO RAYMONDO and MARIA G. AMADOR,
Husband and Wife, and
SERGIO'S PORTABLE WELDING, INC.,
*Defendants*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed January 18, 2019. Reversed and remanded with directions.

*Jack Scott McInteer* and *Randall K. Rathbun*, of Depew Gillen Rathbun & McInteer LC, of Wichita, for appellant.

*Patrick B. Hughes*, of Adams Jones Law Firm, P.A., of Wichita, for appellees.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

HILL, J.: More often than not, when you buy real estate in Kansas, there are strings attached to the property. These strings often come in the form of recorded easements, zoning restrictions, covenants, and other restrictions. These legal restrictions affect the owners' use of the land. Such a restriction exists here where a "perpetual non-

exclusive easement and right-of-way for the purpose of ingress and egress" was recorded and affected the parties when they purchased their respective tracts of land.

This lawsuit arose when the appellant, GBRB Properties, LLC, sued Patricia and David Hill, Sergio Raymondo, Maria G. Amador, and Sergio's Portable Welding, Inc. for obstructing an easement. It sought a permanent injunction to keep the defendants from blocking use of the easement in the future. The trial court denied the injunction, finding that GBRB failed to show an irreparable injury for which it had no adequate remedy at law. Because the trial court's ruling ignored the fact that when dealing with real property rights, an easement is itself a valuable property right, the court erred when it refused to grant the injunction. Thus, we reverse and remand with directions to impose the injunction unless upon further consideration and fact-finding, the Hills' equitable claims compel otherwise.

Before we report the facts, it helps to review some of the law on easements. Here, the parties agree that each of them holds a properly recorded ingress and egress easement across the other's property. Some terms are important. When an easement is formed, the landowner is the servient tenant and the holder of the easement is the dominant tenant.

While many cases deal with easements, there is a consistent theme running through them. "The servient tenant may make any use of his or her property which is consistent with or not calculated to interfere with the use of the easement granted." *Brown v. ConocoPhillips Pipeline Co.*, 47 Kan. App. 2d 26, 33, 271 P.3d 1269 (2012). As we will show later, both parties here are servient and dominant tenants—each have been granted the right to use an adjoining strip of their land for ingress and egress. As for the part of the easement at issue—the east half—the Hills are the landowners or the servient tenants, and GBRB is the holder of the easement, or the dominant tenant. Thus, the Hills may make any use of the property consistent with or not calculated to interfere with GBRB's use of the easement granted.

2

Fundamentally, to determine the parties' rights under an easement, courts examine the language of the easement and the extent of the dominant tenant's use of the easement when it was granted. An obstruction of an easement is something that wrongfully interferes with the privilege the dominant tenant is entitled to by making the easement less convenient and beneficial. Generally, an obstruction of an easement is not actionable unless it is of such material character to interfere with the dominant tenant's reasonable enjoyment of the easement. *Brown*, 47 Kan. App. 2d at 33. We move now to the pertinent details.

*The land is located within the City of Wichita.*

The property owned by all the parties was originally owned by Kreonite, Inc. in Wichita. The Kreonite property extended from 10th Street to 9th Street north to south and from Mead Street to the B.N.S.F. railroad tracks, east to west. The property was originally divided by an alleyway connecting 9th and 10th Streets. At some point, the alley was vacated by the City of Wichita.

Eventually, the Kreonite property was divided and sold. In April 2005, a mutual and reciprocal access easement was executed and recorded in which the owners of the east and west portions of the property each conveyed about half of a 30-foot strip of land between the properties (part or all of which was the vacated alley) to create an easement. Each party conveyed "a perpetual non-exclusive easement and right-of-way for the purpose of ingress and egress to pass and re-pass across, over and upon the Easement Area" and each reserved "the equal right of ingress and egress over the Easement area." The easement was to run with the land and bind successor owners. The easement agreement also acknowledged that an existing guard house encroached on the easement area and provided that if the guard house on the easement was removed, no structure could be reconstructed on the easement.

3

In other words, the easement is a 30-foot strip of the property running north and south down the middle of a tract of land that once was owned by a common owner. The strip is divided about 15 feet wide to the left and 15 feet wide to the right. The owners of the land on the left and the right (or east and west) could use the entire 30-foot easement for ingress and egress of their respective properties.

At the same time the easement was recorded, GBRB purchased the west half of the old Kreonite property subject to the easement. GBRB Properties, LLC is owned by Gary Bachus and his nephew, Ryan Bendell. Bachus and Bendell also own a business known as the Yard Store. The Yard Store leases the property from GBRB. The Yard Store sells aircraft tools and raw materials including aluminum and steel. It stores 40-foot long pieces of steel. The Yard Store had three employees at this location when it began operations on the property. It now has about 20 employees working there.

The east half of the old Kreonite property was divided into three parcels. Patricia Hill owns the north parcel. Her husband, David Hill, operates several businesses on the parcel. They bought the property later in 2005. Sergio Raymondo and Maria G. Amador own the south parcel. GBRB owns the middle parcel.

For many years, all the parties have used only the west half of the easement for ingress and egress, unaware that the east half was part of the easement. They knew there was an easement, but thought the easement was just the west half. There are telephone poles down the middle of the easement. All parties used the east half of the easement for storage until 2017.

The Hills installed a security fence and gate across the entire easement area along 10th Street. The gate opens on the west half of the easement. The opening is less than 16 feet. Yard Store personnel observed construction of the security gate and actually supplied a post for it. Before the security gate was put in, the guard house would have

4

prevented entering the east half of the easement from 10th Street. The Hills removed the guard house. There is also a curb that prevents a vehicle from entering onto the east half of the easement from 10th Street. The guard house used to be up on the curb. The Hills park vehicles and trailers and placed a semi-permanent storage container on the east half of the easement.

In March 2017, GBRB sued the Hills, Raymondo, and Amador, claiming they had obstructed the easement with parked cars, storage, scrap metal, other items, a fence, and a motorized gate. GBRB sought a permanent injunction "preventing the use of the easement area in a way inconsistent with the designated purpose." Raymondo and Amador, along with Sergio's Portable Welding, Inc., removed the obstructions on their portion of the easement and they were dismissed from this case.

*The court tried this case.*

At the trial, Roger Held, who performs maintenance and construction work for the Yard Store, testified that the Hills' obstructions prevented 80-foot semi-trucks from accessing the GBRB property. When asked whether he could bring a semi-truck onto the easement from 9th Street rather than through the 10th Street gate, Held testified that it was impossible even after Raymondo removed his obstructions. "The way that it's structured off the curb, the utility pole, in fact I backed our truck out the other day and blew a tire on the curb that was cut, it was damaged, so, you're never going to get a semi to the south."

About bringing a semi down the easement, Held first stated, "I'd like to have the option." Then he said, "[W]e're out of room at our other facility. We need it." When asked about specific plans he said, "Specific plans, we've got to have area to put our raw materials in, so I'm trying to figure out how to do this." Bendell testified that he buys 40-foot pieces of steel that he wanted to store in his east lot. Bendell testified he did not have

5

a written plan for the property if the easement were cleared. But he had a quote for $60,000 for a building to store long metal at his other property that he would have to buy if the easement was not cleared. Bendell also testified he had looked at buying another piece of property for storage.

The Yard Store has a fence that runs along the alley to enclose its property. Held set their fence back west 3 or 4 feet from the easement to allow room to get trucks through because it was so narrow. If the easement were enforced, it would move the fence east to the actual easement line to allow more parking for cars.

David Hill testified that he would not have bought the property if he knew he could not use the east half of the easement for storage. "I mean, the number of vehicles that we have, the number of things that we do, it would not have been feasible. There's just no way." He testified if he had to clear the easement area, it would make his business operations "almost impossible. I don't think we'd have enough room." Hill testified he bought the storage container, several large trailers, and a bus with the understanding that he could use the east half of the easement for storage. As for the vehicles parked on the easement, Hill testified they were movable, "Everything runs."

Hill testified that his businesses get semi-truck deliveries 5 to 10 times a year. A semi-truck recently pulled onto the easement to unload tuna at the back of their building. Most of the semi-trucks that come onto their property are 50- or 55-foot semis. He testified he had four semi-trailers parked on his property. Those semi-trailers came down the west half of the easement off of 10th Street without issue. Tony Hill testified he observed a utility truck that was probably 100 feet long drive into the easement area from 10th Street to replace a power pole. He testified the telephone poles are 45 feet long.

*The trial court rendered specific findings.*

When it denied the injunction, the trial court ruled the easement still existed but GBRB failed to show immediate irreparable harm:

- The parties had at least constructive notice of the easement in 2005.
- Other than the 10th Street gate, the Hills have no permanent structures on the easement. But the Hills do store property in a storage container located on the easement and park vehicles on the easement.
- The Hills' businesses rely on the easement area to provide temporary storage. Without utilization of the easement area, they will not be able to effectively operate their four businesses.
- GBRB has delivery access by semi-tractor trailer via the west side of the easement. However, this is only possible because GBRB's fence encroaches on its property by 4 feet. GBRB wants to use larger tractor trailers for deliveries in the future, but presented no actual plans to do so.
- The current use of the easement area by the Hills does not unreasonably interfere with the actual use of the area by GBRB for ingress and egress "because the evidence does not establish [GBRB's] claim that the current use of the easement area interferes with trucks and trailers reaching the GBRB Property from 10th Street. Testimony indicating that some larger tractor trailer may not be able to access the property via 10th Street but no evidence has been provided showing [GBRB] has actual plans in place to have the larger trucks and trailers enter the GBRB Property from 10th Street."
- There is no gate limiting access to the easement on the 9th Street location, and Raymondo previously removed all items obstructing the easement on his property.

7

- "[GBRB] has failed to establish an irreparable injury for which it has no adequate remedy at law. The easement area to the west of the power poles covered by the agreement, the vacated alley, provides all of the access necessary for ingress and egress with respect to the GBRB Property. The use of the easement area to the east of the power poles for ingress and egress is impaired. The 10th Street gate also impairs access on the east side of easement. The easement is still accessible by 9th Street."
- GBRB has failed to show that it will suffer immediate irreparable harm without the injunction.

The trial court held the easement was still in effect; it had not been abandoned by nonuse. But the court found that GBRB had to show "a reasonable probability of suffering irreparable future injury," and that the injury GBRB testified to was only speculative, not immediate. The court held that GBRB also failed to show no adequate remedy at law existed.

*We examine the easement itself.*

There are two types of easement—a specific and a blanket easement. A specific easement is formed when the width, length, and location of the easement for ingress and egress have been expressly set forth in the instrument creating the easement. A blanket easement, in contrast, is formed when the instrument creating the easement does not delineate specific dimensions of the easement for ingress and egress. *Brown*, 47 Kan. App. 2d at 33-34.

This case concerns a specific easement. The width, length, and location of the easement for ingress and egress were expressly described in the publicly recorded Mutual and Reciprocal Access Easement agreement. Each party granted "a perpetual non-exclusive easement and right-of-way for the purpose of ingress and egress to pass and re-

8

pass across, over and upon the Easement Area described above." That this is a specific easement is important.

With a specific easement, the expressed terms of the grant or reservation are controlling and considerations of what may be necessary or reasonable are not controlling. *Aladdin Petroleum Corporation v. Gold Crown Properties, Inc.*, 221 Kan. 579, 584, 561 P.2d 818 (1977). The *Aladdin* court determined the easement granted a specific easement for ingress and egress along with the purchase of some real estate for an apartment complex. 221 Kan. at 585. Once the trial court determined the easement was for a definite width, length, and location, any additional determination of the reasonableness of the width was not permitted. Where a right of passageway is granted over a strip of land having defined boundaries, such right extends to the full width of the tract described. 221 Kan. at 588. The basic question then becomes whether there is an encroachment.

*Aladdin* helps us in another way as well. In that case, the court distinguished between parking vehicles on a right-of-way easement and erecting permanent structures. 221 Kan. at 587. Parking is allowed if it does not unreasonably interfere with travel on the easement. But "[c]onstruction of carports or other permanent obstructions over a portion of an easement for passage of a definite width wrongfully impairs and interferes with the privilege of passage which the owner of the definite easement holds." 221 Kan. at 588. "'The owner of a right of way has no right to erect any buildings or other structures on the way; and this is so notwithstanding the presence of such structures may not interfere with the use of the way as a mere passageway.' [Citation omitted.]" 221 Kan. at 588. The court granted a mandatory injunction for removal of the carports. 221 Kan. at 588.

Following the ruling in *Aladdin*, we conclude that the Hills may not encroach upon GBRB's right-of-way within the easement area by erecting permanent structures. The

9

trial court found the 10th Street gate is a permanent structure. Moreover, the language of the easement specifically provided that if the guard house on the easement was removed, no structure should be reconstructed on the easement. The gate is inconsistent with and interferes with the easement granted. We note while the trial court did not find the storage container to be a permanent structure, the court failed to determine whether it was an unreasonable interference with travel on the easement. With no specific findings on that point, we will not address the issue. At least the 10th Street gate obstruction to the easement is actionable.

*The injury to GBRB's legal right-of-way was undisputed.*

The trial court demanded too much from GBRB. Construction of permanent structures on GBRB's specific right-of-way easement is not speculative or theoretical—it is an actual injury. When the owner of the servient estate erects structures on a right-of-way easement, there is a continuing injury to the holder of the easement and the trial court has the power to order the structures removed. See *Mid-America Pipeline Co. v. Wietharn*, 246 Kan. 238, 243-44, 787 P.2d 716 (1990). In *Aladdin*, the court simply ordered a mandatory injunction without further discussion. In *Wietharn*, the court ordered a mandatory injunction when the servient tenant constructed four buildings over a pipeline easement after it was repeatedly warned not to build on the easement, the construction of the buildings created a continuing danger, and the buildings interfered with the operation and maintenance of the pipeline. 246 Kan. at 250-51.

This distinction helps to explain the reasoning of our Supreme Court in cases involving injunctive relief and real estate:

> "'. . . (T)here is an obvious distinction between injury and damage, which is not always observed in dealing with the question of injunctive relief. Whatever invades a man's right of dominion over his property is a legal injury, whether damage ensues or not. It is a right

10

for the violation of which the law imports damage, and courts of equity will interpose in a proper case to protect the right, without any reference to the question of actual damage; a showing of specific money damage is not necessary to support an injunction.'" *Connolly v. Frobenius*, 2 Kan. App. 2d 18, 28, 574 P.2d 971 (1978).

It is well established in Kansas law that an easement is a valuable property right. See *Beloit Bldg. Co. v. Quinn*, 145 Kan. 507, 511, 68 P.2d 549 (1937). Once lost, how does one recover such a right except through enforcing it? In restrictive covenant cases, "'irreparable harm automatically occurs as a matter of law arising from a violation of a covenant running with the land'" and thus, plaintiffs need not make an independent showing of irreparable harm. *Persimmon Hill First Homes Ass'n v. Lonsdale*, 31 Kan. App. 2d 889, 895-96, 75 P.3d 278 (2003). In this regard, we see no fundamental differences between restrictive covenants and easements. Here, we treat them alike.

The trial court erred in finding GBRB had sustained no injury by disregarding undisputed evidence that the defendants had obstructed its right-of-way on the easement. The obstruction was not merely threatened or theoretical. We are convinced that this case is like *Smith v. Harris*, 181 Kan. 237, 311 P.2d 325 (1957), where the Supreme Court reversed the trial court's lifting of an injunction enforcing an easement in a driveway created for the benefit of two parcels of real estate originally owned by the same owner. The court ordered the injunction to protect the owner of the easement. The court here erred when it refused to enforce the easement.

*GBRB met the requirements to obtain an injunction.*

A brief review of the law is helpful here. The Kansas Supreme Court has formulated the test this way: "To obtain injunctive relief from a prospective injury, a party must show that a reasonable probability of injury exists and that an action at law will not provide adequate remedy. Mere apprehension or possibility of wrong or injury

11

ordinarily does not warrant the granting of an injunction." *Wietharn*, 246 Kan. at 242. Thus, *Wietharn* established three requirements for issuing a mandatory injunction under Kansas law: (1) reasonable probability of injury; (2) no adequate remedy at law; and (3) the party is clearly entitled to a mandatory injunction. See *Mid-America Pipeline v. Lario Enterprises*, 942 F.2d 1519, 1524-25 (10th Cir. 1991) (quoting *Wietharn*, 246 Kan. at 242). The trial court need not balance the equities between the parties when the defendant acted with knowledge of the easement and the movant had clearly defined rights that were recognized and protected by law. See *Wietharn*, 246 Kan. at 251.

When the trial court found that GBRB established no irreparable injury because its injury was only speculative, it erred. It ignored the *Persimmon* rule that irreparable harm automatically occurs as a matter of law arising from a violation of a covenant running with the land. Recorded easements are no different than recorded covenants in this regard. There is no need for GBRB to show irreparable harm because the easement—a valuable property right—has been lost. The loss of the easement is the future irreparable harm that the district court searched for.

*GBRB showed there was no adequate remedy at law.*

The next question is whether there was an adequate remedy at law. Because an injunction is an equitable remedy, the trial court can fashion an alternative remedy appropriate to the problem at hand. *Wietharn*, 246 Kan. at 244. The trial court suggested that the remedy is for GBRB to access the easement off of 9th Street. But there was no evidence that it was possible to bring trucks into the easement from 9th Street. Instead, Held testified it was not possible to bring trucks in off of 9th Street, and this contention went undisputed. Hill testified that he brought trucks into the easement area from 10th Street.

In refuting a party's contention that the holder of a pipeline easement had an adequate remedy at law through money damages, this court found:

> "The construction on landowner's property of any structure without any easement agreement has been recognized as a continuing violation of the landowner's rights that does not cease with the completion of the structure and generally cannot be compensated by monetary damages. This principle is consistent with the general principle that legal remedies are inadequate to redress ongoing or continuing violations.
>
> ". . . Where there has been shown an ongoing or continuing violation of a landowner's rights by the construction of trespassing structures, the general rule is that legal remedies are inadequate and that injunctive relief is appropriate. Our Supreme Court embraced this general rule in *Wietharn*, and we embrace it here. [Citations omitted.]" *Friess v. Quest Cherokee*, 42 Kan. App. 2d 60, 65-66, 209 P.3d 722 (2009).

The trial court ignored undisputed evidence that the 9th Street entry was inadequate and GBRB had no adequate remedy at law.

*GBRB has standing to sue.*

The Hills contend that GBRB lacks standing to sue because GBRB is the landlord of the property and is not the party whose use of the easement has been impaired. They also argue that the parties whose conduct is sought to be enjoined were not made defendants. We do not agree with either argument.

Standing is a jurisdictional question in which courts must determine whether a party has a sufficient stake in the controversy to warrant invocation of jurisdiction and to justify the exercise of the court's remedial powers on that party's behalf. *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 854, 370 P.3d 1170 (2016); see also *In re Adoption of T.M.M.H.*, 307 Kan. 902, 908, 416 P.3d 999 (2018) (standing is

"'party's right to make a legal claim or seek judicial enforcement of a duty or a right'"). Standing to bring an action is a component of subject matter jurisdiction and may be raised at any time. *Peterson v. Ferrell*, 302 Kan. 99, 102-03, 349 P.3d 1269 (2015). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

The general rule for standing to enforce an easement is that

"The owner of the land to which the easement is appurtenant if in possession may of course maintain an action for disturbance or obstruction of the easement. Further, even though the person is not in possession, the person may maintain an action whenever he or she can show damages by the injury complained of.

. . . .

". . . An individual has standing to enforce the right to use an easement if he or she has the right to benefit from the easement." 28A C.J.S., Easements § 258.

GBRB leases the property to the Yard Store. GBRB and the Yard Store are both owned by Bachus and Bendell. GBRB has a sufficient stake in the controversy even though it is not the entity in possession of the property.

The Hills are also proper parties. The rule is:

"Any person creating or assisting to create or maintain an obstruction to an easement may be sued, whether the person has any interest in the premises on which the easement is located or not. It has also been held that the servient owner may be sued for the obstruction of the way by others but with the servient owner's knowledge and consent." 28A C.J.S., Easements § 259.

Here, Patricia Hill owns the property. Her husband, David Hill, operates several business on the parcel. David Hill testified to constructing the security gate, parking vehicles on

14

the easement, and placing the storage container on the easement. We therefore reject the standing arguments.

*We will not address some other issues.*

The Hills make several claims that we simply cannot adjudicate because the trial court made no findings about them. They contend:

- GBRB waived its claim by participating in the construction of the gate and using the east easement area for storage.
- The parties modified the easement by implied agreement.
- GBRB's claim is barred by the statute of limitations in K.S.A. 60-512 or laches.
- GBRB is not entitled to equitable relief because it contributed to its injury by participating in construction of the gate.

These equitable concerns were questions for the trial court. We will not rule upon them.

We find the trial court erred when it failed to recognize that the violation of the easement is itself sufficient to call for an injunction. We reverse and remand to the district court with directions to enter an injunction, unless upon further fact-finding and consideration by the trial court, other legal and equitable concerns require otherwise.

Reversed and remanded with directions.